# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WIRELESS DISCOVERY LLC, <br><br> Plaintiff, <br> v. <br><br> COFFEE MEETS BAGEL, INC., <br><br> Defendant. | C.A. No. 22-478-GBW |
| WIRELESS DISCOVERY LLC, <br><br> Plaintiff, <br> v. <br><br> DOWN APP, INC., <br><br> Defendant. | C.A. No. 22-479-GBW |
| WIRELESS DISCOVERY LLC, <br><br> Plaintiff, <br> v. <br><br> GRINDR, INC., <br><br> Defendant. | C.A. No. 22-481-GBW |
| WIRELESS DISCOVERY LLC, <br><br> Plaintiff, <br> v. <br><br> HILY CORP., <br><br> Defendant. | C.A. No. 22-482-GBW |

1

## MEMORANDUM ORDER

Presently before this Court is Defendant Coffee Meets Bagel, Inc.'s ("Coffee Meets Bagel"), Defendant Down App, Inc.'s ("Down App"), Defendant Grindr, Inc.'s ("Grindr"), and Defendant Hily, Corp.'s ("Hily") (collectively, "Defendants") Motions to Dismiss for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). C.A. No. 22-478, D.I. 24; C.A. No. 22-479, D.I. 25; C.A. No. 22-481, D.I. 27; C.A. No. 22-482, D.I. 25.[1] The Court has reviewed the parties' briefing, D.I. 25, D.I. 30, D.I. 36,[2] and heard oral argument on December 14, 2022.[3] ("Tr. __"). For the reasons below, the Court GRANTS Defendants' Motion.

### I.   BACKGROUND

On April 13, 2022, Plaintiff Wireless Discovery LLC ("Wireless Discovery") sued Defendants in separate patent infringement cases asserting infringement of U.S. Patent No. 9,264,875 ("the '875 patent"). D.I. 1. Wireless Discovery amended its complaint on July 18, 2022, asserting three additional patents: U.S. Patent Nos. 9,357,352 (the "'352 patent"), 10,321,267 (the "'267 patent"), and 10,334,397 (the "'397 patent"). D.I. 17; No. 22-479, D.I. 18; No. 22-481, D.I. 20; No. 22-482, D.I. 19.

---

[1] All docket entries are citations to Civil Docket No. 22-478, unless otherwise indicated.

[2] The parties also filed letter briefs identifying which U.S. Supreme Court or Federal Circuit case(s) they contend is most similar to the patent(s)-at issue. D.I. 42, D.I. 43.

[3] The Court also heard oral argument on Defendant eHarmony, Inc.'s and Defendant The Meet Group, Inc.'s Motion to Dismiss in *Wireless Discovery LLC v. eHarmony, Inc.*, No. 22-480 and *Wireless Discovery LLC v. The Meet Group, Inc.*, No. 22-484. C.A. No. 22-480, D.I. 30; C.A. No. 22-484, D.I. 12. The Court issued a similar but separate opinion in those cases. The Court similarly finds in those cases that the asserted patents are not patent eligible under 35 U.S.C. § 101. The Court also granted Defendant eHarmony, Inc.'s and Defendant The Meet Group, Inc.'s Motions to Dismiss claims 1 through 9 of the '875 patent based on collateral estoppel.

The asserted patents are all from the same patent family and are continuations-in-part of U.S. Patent No. 8,914,024, which is not asserted in any of these cases. *See* D.I. 25 at 3. The asserted patents all relate generally to the idea of social networking, i.e., discovering members of the same social network in the same vicinity and exchanging member's personal information. *See* D.I. 17-5 at 1:16-22 ("The invention relates to discovering members of a social network by associating their personal attributes to the mobile device for the purpose of exchanging information using mobile communication devices and, in particular, exchanging personal information between one or more mobile communication devices.").

Individuals can "use their mobile phones to discover others by personal attributes, such as by photos and names, after which, the two parties can exchange information over the internet." *Id.* at 2:4-7. These individuals can discover other members who are located "within a vicinity." *Id.* at 4:4-6. The "vicinity" is determined by a location that was reported to the server, in the geographic area specified by a user's "search criteria," or by a location recorded in a database. *Id.* at 5:4-15.

Individuals can send "invitations" to other members in the vicinity. *Id.* at 5:14-22. "The invitation may take the form of a social card, VCard, or other manner of engaging another person in a social atmosphere, or even a business setting such as a meeting, trade show, conference, etc." *Id.* at 5:18-22. If a user accepts the "invitation," "members can elect to exchange or send personalized, intimate contact information over the internet after the users have discovered each other." *Id.* at 4:10-12. The invention "provides a system and method that enables free discovery of others who also desire social interaction, but without being constrained by hardware compatibility issues inherent in mobile devices by different manufacturers." *Id.* at 2:20-24.

## II. LEGAL STANDARD

### a. Motion to Dismiss Under Rule 12(b)(6)

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "'disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements.'" *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)). Under Rule 12(b)(6), the Court must accept as true all factual allegations in the Complaint and view those facts in the light most favorable to the plaintiff. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020).

### b. Patent Eligible Subject Matter

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Section 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 2621 (2018); *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (stating that patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6)

4

or (c) motion"); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (stating that "it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion" (quoting *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016))); *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1379 (Fed. Cir. 2018) (affirming Rule 12(b)(6) dismissal based on § 101 patent ineligibility). This is, however, appropriate "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

Section 101 of the Patent Act defines patent-eligible subject matter. It states, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has held that there are exceptions to § 101. "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (internal quotation marks and citation omitted). "[I]n applying the § 101 exception, [the court] must distinguish between patents that claim the 'building blocks' of human ingenuity and those that integrate the building blocks into something more[] thereby 'transforming' them into a patent-eligible invention. The former 'would risk disproportionately tying up the use of the underlying' ideas, and are therefore ineligible for patent protection. The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws." *Id.* at 217 (cleaned up).

The Supreme Court's *Alice* decision established a two-step framework for determining patent-eligibility under § 101. In the first step, the court must determine whether the claims at issue are directed to a patent ineligible concept. *Id.* In other words, are the claims directed to a

law of nature, natural phenomenon, or abstract idea? *Id.* If the answer to the question is "no," then the patent is not invalid for teaching ineligible subject matter under § 101. If the answer to the question is "yes," then the court proceeds to step two, where it considers "the elements of each claim both individually and as an ordered combination" to determine if there is an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217-18 (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 221 (internal quotation marks and citation omitted). Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222 (quoting *Bilski*, 561 U.S. at 610–11). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223. "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field," which underlies the second step of *Alice*, "is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

### III. DISCUSSION

#### a. Representativeness

The parties dispute whether certain claims of the asserted patents are representative. *See* D.I. 25 at 6-8, D.I. 30 at 3-4, D.I. 36 at 2-3. Defendants argue that claim 10 of the '267 patent is representative of the other claims in the asserted patents, because all the claims contain the "same essential elements." D.I. 25 at 6. Claim 10 of the '267 patent recites:

6

10. A method comprising:

    using a computing device to communicate with various mobile and terminal devices to manage introduction and connection of members belonging to a same network by sharing personal attributes between members;

    communicatively linking a first mobile communications device to said computing device; communicatively linking a second mobile communications device to said computing device;

    using said computing device to provide access to stored user profile information about a first user and a second user;

    using said computing device to store static locations of members and receive information identifying current dynamic locations of all members in said network;

    using said computing device to calculate and determine a proximity of user locations;

    using said computing device to send to said first user upon inquiring of other members in said network of said first user, personal attributes of all other members based on proximity calculations to select members that said first user may wish to connect with, and to send to said second mobile communication device an invitation on behalf of said first user for said second user to accept connecting with said first user;

    using said computing device to communicatively connect said first user and said second user;

    using said computing device to locate information about said second user from a social network storage file of said second user, and transmit this information to said first mobile communications device, wherein the first user and the second user are members of a same social network, and the computing device is to disclose non-anonymous social network attributes including a picture, name, and location of the first user and the second user in a vicinity or within a predetermined distance from one another for the purpose of connecting members of the same social network based in part on proximity calculations between connecting members;

    using said computing device to permit discoverable members to have their respective devices turned on or turned off at a time of a search being conducted by said first user; and

    using said computing device to permit said discoverable members to have their respective devices unconnected to an internet connection service at said time of the search being conducted by said first user,

7

>wherein any of turned off devices and disconnected devices is discoverable by said computer device as said internet connection service is configured to report said any of turned off devices and disconnected devices as discoverable based on a latest static and dynamic location in proximity to said first user.

D.I. 17-6 at claim 10.

Claim 10 of the '267 patent can be distilled down to the following seven steps: "(1) 'linking' mobile devices to a computer, (2) accessing user profiles and membership, (3) using user location, (4) determining user proximity, (5) exchanging 'personal attributes' of users and invitations to connect, [] (6) connecting members for communication, [and] (7) allowing offline connecting." D.I. 25 at 6 (citing D.I. 17-6 at claim 10). The other asserted patents are "substantially similar." *Content Extraction and Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (citation omitted); *see also* D.I. 36 at 2-3. In fact, in Wireless Discovery's opposition brief, it states that the asserted patents are directed to nearly verbatim ideas. *Compare* D.I. 30 at 7 ("The Claims of the [']875 patent are directed to improvements in exchanging information using mobile communications devices, in particular discovering members of a social network by associating their personal attributes to the mobile communications devices for purposes of exchange") *with id.* at 11 ("The Claims of the [']267 patent are directed to improvements in exchanging information using mobile communications devices, in particular discovering personal attributes for purposes of exchange.").

Defendants argue that there are also no meaningful differences "that would make [c]laim 10 of the '267 [p]atent anything other than 'substantially similar' to the other asserted claims." D.I. 36 at 2 (citation omitted). Defendants note that independent claim 1 of the '267 patent is a system claim version of claim 10 of the '267 patent and recites the "same core concept." D.I. 25 at 6. The other claims of the '267 patents merely recite "generic components used for their conventional purpose." *Id.* Defendants also argue that claim 10 of the '267 patent "is

8

representative of the other Asserted Patents because the claims of all the Asserted Patents rely on these same essential steps with only slight variations based on other generic components used for their conventional purpose." *Id.*; *see also id.* at 7-8.

Wireless Discovery disagrees and argues that the other claims have "different concrete and technical elements and steps requiring separate patentability analysis." D.I. 30 at 3. For example, Wireless Discovery argues that claim 10 of the '875 patent "requires a unique device hardware identifier which is not a feature of the [']267 [p]atent claims." *Id.*[4] During oral argument, Wireless

---

[4] Claim 10 of the '875 patent recites:

> 10. A method comprising:
>
> providing, via a computing device, accessible through any of an internet connection and a mobile telecommunications provider network, access to stored user profile information about a first user using a respective first mobile communications device and a second user, using a respective second mobile communications device;
>
> receiving, via the computing device, indications of the locations of the first and second mobile communications devices;
>
> receiving, via the computing device, a unique device hardware identifier from all communications devices from all users linked in a social network to associate with profiles and authenticate when users sign in to a user account;
> sending, via the computing device, to the second mobile communications device, an invitation to accept any of an invitation to connect and personal attribute information from, or share personal attribute information with, the first user, upon receipt of permission from the second user to receive personal attribute information about, or share personal attribute information with, the first user; and
>
> connecting, via the computing device, the first user and the second user through the computing device for personal communication between first user and the second user, the personal communication comprising one or more SMS, E-mail, chat/instant messaging, multimedia, voice or video,
>
> wherein the computing device is configured to locate information about the second user from a social network file of the second user, and transmit this information to the first mobile communications device, and

9

Discovery argued that claim 10 of the '875 patent's recitation of a unique device hardware identifier provides a "hardware solution[]." *See* Tr. 27:10-19. Wireless Discovery also notes that claim 1 of the '267 patent "requires a computing device that permits discoverable members to have their respective devices turned on or off," which is not recited in claim 10 of the '875 patent. D.I. 30 at 3.

For the other asserted patents, Wireless Discovery states, "[t]here are additional examples of differences in the claims of each of the Asserted Patents that for purposes of brevity are not all identified here, but can be seen in the attached Exhibit I." *Id.* Exhibit I is a table that lists one independent claim from each of the asserted patents. *See generally* D.I. 30-2. Even with the attachment of Exhibit I, Wireless Discovery fails to describe *what* additional concrete and technical elements the other claims recite that would require the Court to conduct a separate patentability analysis. Wireless Discovery fails to "present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer*, 881 F.3d at 1365 (citations omitted).

The Court is not convinced by Wireless Discovery's arguments that the other claims of the asserted patents have different concrete and technical elements and steps requiring separate patentability analysis. The unique hardware identifier and turning on and off functionality are just generic components used for their conventional purpose. Wireless Discovery also has not proven that there are meaningful differences between claim 10 of the '267 patent and any claim of the

---

wherein the first and second users are members of a same social network, and the computing device is operable to disclose social network attributes such as a picture, name, and a location of first and second users in the vicinity or within a particular distance from one another for the purpose of connecting members.

D.I. 17-5 at claim 10.

asserted patents. Thus, the Court finds claim 10 of the '267 patent is representative of all claims, because it is substantially similar and directed to the same idea as the other claims in the asserted patents.

### b. *Alice* Step 1

The Court must first determine whether the asserted patents are directed toward a patent-ineligible concept. The Court finds claim 10 of the '267 patent is directed to the abstract idea of social networking, such as matching people by their location. Defendants include the below table in their briefs, which summarizes how claim 10 of the '267 patent is directed to an abstract idea.

| Claim Language | Claimed Idea |
| --- | --- |
| 10. A method comprising: | |
| using a computing device to communicate with various mobile and terminal devices to manage introduction and connection of members belonging to a same network by sharing personal attributes between members; | Linking mobile devices |
| communicatively linking a first mobile communications device to said computing device; communicatively linking a second mobile communications device to said computing device; | Linking mobile devices |
| using said computing device to provide access to stored user profile information about a first user and a second user; | Accessing membership data |
| using said computing device to store static locations of members and receive information identifying current dynamic locations of all members in said network; | Using user location |
| using said computing device to calculate and determine a proximity of user locations; | Determining user proximity |
| using said computing device to send to said first user upon inquiring of other members in said network of said first user, personal attributes of all other members based on proximity calculations to select members that said first user may wish to connect with, and to send to said second mobile communication | Exchanging member information and sending invitations to connect |

11

| | |
|---|---|
| device an invitation on behalf of said first user for said second user to accept connecting with said first user; | |
| using said computing device to communicatively connect said first user and said second user; | Exchanging member information |
| using said computing device to locate information about said second user from a social network storage file of said second user, and transmit this information to said first mobile communications device, wherein the first user and the second user are members of a same social network, and the computing device is to disclose non-anonymous social network attributes including a picture, name, and location of the first user and the second user in a vicinity or within a predetermined distance from one another for the purpose of connecting members of the same social network based in part on proximity calculations between connecting members; | Connecting members for communication |
| using said computing device to permit discoverable members to have their respective devices turned on or turned off at a time of a search being conducted by said first user; and | Allowing offline connecting |
| using said computing device to permit said discoverable members to have their respective devices unconnected to an internet connection service at said time of the search being conducted by said first user, | Allowing offline connecting |
| wherein any of turned off devices and disconnected devices is discoverable by said computer device as said internet connection service is configured to report said any of turned off devices and disconnected devices as discoverable based on a latest static and dynamic location in proximity to said first user. | Allowing offline connecting |

D.I. 25 at 9-10.

As evidenced above, claim 10 of the '267 patent is directed to the abstract idea of "simply exchanging information about people based on their location and membership in an organization." D.I. 25 at 10. In other words, claim 10 of the '267 patent is directed to "the abstract idea of

automating the conventional establishment of social networks to allow humans to exchange information and form relationships." *NetSoc, LLC v. Match Grp., LLC*, 838 F. App'x 544, 548 (Fed. Cir. 2020). Courts in this District and other districts have also found claims similar to claim 10 of the '267 patent abstract. In *Jedi Technologies, Inc. v. Spark Networks, Inc.*, the court found patents related to the idea of "matching people based on criteria such as personality traits or location" abstract. No. 16-1055-GMS, 2017 WL 3315279, at *7 (D. Del. Aug. 3, 2017). Courts have also found "the basic concept of controlled exchange of information about people as historically practiced by matchmakers and headhunters" to be drawn to an abstract idea and claims directed to "[m]atching based on geographic location" abstract. *See Walker Digit., LLC v. Google, Inc.*, 66 F. Supp. 3d 501, 508 (D. Del. 2014) (first quote); *Perry St. Software, Inc. v. Jedi Techs., Inc.*, 548 F. Supp. 3d 418, 433 (S.D.N.Y. 2021) (second quote).

Claim 10 of the '267 patent is no different than these cases. One of the objectives of the '267 patent is to provide a method to "communicate with various mobile and terminal devices to manage introduction and connection of members belonging to a same network by sharing personal attributes between members." D.I. 17-6 at 2:42-45; *see also* D.I. 17-5 at 2:4-7 ("a method that allows individuals to use their mobile phones to discover others by personal attributes …[and] exchange information over the internet").

Wireless Discovery argued during oral argument that the asserted patents are not directed to an abstract idea because they are directed to telecommunications network. *See, e.g.*, Tr. 36:1-7; 37:8-11. According to Wireless Discovery, the asserted patents add additional "hardware solutions" to allow communications between mobile devices. *See* Tr. 27:10-19. Thus, Wireless Discovery concludes that the claims of the asserted patents "are directed toward specific means

13

and methods that improve relevant technologies." Tr. 31:1-6 (citing *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016)).

The Court disagrees with Wireless Discovery's argument that the claims are not directed to an abstract idea. In *McRO*, the Federal Circuit held the invention recited "specific rules" or algorithms for a computer to "achieve an improved technological result," i.e., to produce "'accurate and realistic lip synchronization and facial expression in animated characters.'" *McRO*, 837 F.3d at 1313-16 (citation omitted). Claim 10 of the '267 patent does not recite any specific rules or algorithms to improve telecommunications network, nor does claim 10 of the '267 patent improve specific computer technology or solve specific computer problems. *See, e.g., Ancora Techs. v. HTC Am., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018) (finding asserted patent directed to improving security against a computer's unauthorized use of a program non-abstract because the asserted patent improved computer functionality and was "done by a specific technique that departs from earlier approaches to solve a specific computer problem."). Claim 10 of the '267 patent does not describe a specific technique that departs from earlier approaches to solve a specific computer problem. The claims recite purely functional steps related to the abstract idea of exchanging information about people based on their location and membership in an organization.

For the above reasons, the Court finds claim 10 of the '267 patent directed to the abstract idea of social networking. The Court must now proceed to *Alice* step two.

### c. *Alice* Step 2

In *Alice* step two, the Court considers the elements of the claim, both individually and as an ordered combination, to assess whether "the limitations present in the claims represent a patent-eligible application of the abstract idea." *Content Extraction*, 776 F.3d at 1347 (citation omitted). Merely reciting the use of a generic computer or adding the words "apply it with a computer"

cannot convert a patent-ineligible abstract idea into a patent-eligible invention. *Alice*, 573 U.S. at 223; *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1332 (Fed. Cir. 2015). "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (citation omitted).

The Court finds no saving inventive concept in claim 10 of the '267 patent. The asserted patents describe a social network system that uses "available technology and standard protocols available today," including "a standard cell phone," a "cellular phone network," "existing standard Bluetooth technology," and "Wi-Fi." D.I. 17-5 at 2:31, 2:43-44, 2:50, 4:17-20, 11:45-46. Nothing in claim 10 of the '267 patent requires anything other than "off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016). Claim 10 of the '267 patent recites the use of generic components such as "a computing device," "network," and "mobile communications device." D.I. 17-6 at claim 10. The specification of the '267 patent also states that the invention can be implemented on conventional servers. *Id.* at 5:67-6:11 ("In certain embodiments, communication between the member's mobile devices and the server goes through a BTS 403, and communicates according to a packet-based telecommunications protocol such as GPS, 3G, 4G, LTE or any alternative data technology. In FIG. 1, communication links to/from mobile devices 400 and a network-based server 401 are provided; e.g., internet server, over a BTS 403 using standard communication protocols that provide separate facilities for transmission of digital data, or through wireless connection 404 capable of connecting the user to the internet."). Claim 10 of the '267 patent "mere[ly] recit[es] a generic computer," which is not an inventive concept that could "transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223. Claim 10 of the '267 patent fails to add "a technological improvement to

the computer or otherwise provide 'something more' to 'transform' the claims." *NetSoc*, 838 F. App'x at 549 (citing *Alice*, 573 U.S. at 217).

Wireless Discovery makes several conclusionary statements that the asserted patents recite an inventive concept. *See* D.I. 30 at 4-7. Wireless Discovery states that the inventive concept of the '267 patent is "easily exchanging contact and/or personal information over the internet for purposes of social interaction by way of mobile devices without limitations to hardware brands." D.I. 30 at 4. Wireless Discovery's alleged inventive concepts are merely rephrasing the abstract idea and saying it is an inventive concept, which is improper. *Trading Techs. Int'l, Inc. v. IBM LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019) ("[t]he abstract idea itself cannot supply the invention concept, 'no matter how groundbreaking the advance.'" (internal citations omitted)).

Additionally, "[a] claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].' Those 'additional features' must be more than 'well-understood, routine, conventional activity.'" *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (citations omitted). Wireless Discovery fails to show how the alleged inventive concepts are more than well-understood, routine, or conventional. Tellingly, Wireless Discovery only cites to the specification in its brief, not to the claims, to support its bare assertions that the asserted patents recite an inventive concept. *See* D.I. 30 at 4-7. Wireless Discovery's analysis is flawed because its conclusory statements about the asserted patents' inventive concepts are untethered to the claim language of the asserted patents. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) ("The § 101 inquiry must focus on the language of the Asserted Claims themselves, and the specification cannot be used to import details from the specification if those details are not claimed." (internal citations and quotation marks omitted)); *see also American Axle & Mfg., Inc. v. Neapco Holdings*

*LLC*, 967 F.3d 1285, 1293 (Fed. Cir. 2020) ("[F]eatures that are not claimed are irrelevant as to step 1 or step 2 of the Mayo/Alice analysis").

Wireless Discovery also argued during oral argument that the asserted patents recite interactions that create a social network that is "manipulated to yield the desired result, allowing connection of devices without requiring hardware compatibility, a result that overrides any consideration that this is a routine and conventional sequence of events ordinarily encountered in forming a social network." Tr. 40:5-11. The Court disagrees and finds the computer components recited in the claims are used for their conventional purposes. Claim 10 of the '267 patent recites "establishing a social network on a computer," which are "are quintessential 'apply it with a computer' claims." *NetSoc*, 838 F. App'x. 544 at 548-49 (citation omitted).

For the above reasons, the Court finds no inventive concept that transforms claim 10 of the '267 patent into a patent-eligible application of the abstract idea. Thus, the Court finds by clear and convincing evidence that claim 10 of the '267 patent fails *Alice* step 2 and the '875, '362, '267, and '397 patents are invalid under § 101.

### d. Wireless Discovery's Request for Leave to Amend

Wireless Discovery also requests leave to amend its complaint "if the Court believes the teachings and citations from the patents-in-suit should be incorporated into the complaint." *See* D.I. 30 at 19. When deciding a 12(b)(6) motion, a court considers "documents that are attached to or submitted with the complaint." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citation omitted). Wireless Discovery attached to its complaint the asserted patents. D.I. 17-3, D.I. 17-4, D.I. 17-5, D.I. 17-6. The Court reviewed those patents when deciding the pending Motion. The claims of the patents say what they say. Amending the complaint would not change

17

the Court's § 101 analysis. Thus, Wireless Discovery's amendments would be futile, and the Court denies Wireless Discovery's request.

## IV. CONCLUSION

Therefore, at Wilmington this 6th day of February 2023, **IT IS HEREBY ORDERED** that Defendants' Motion (No. 22-478, D.I. 24; No. 22-479, D.I. 25; No. 22-481, D.I. 27; No. 22-482, D.I. 25) is **GRANTED**.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE